**Robert HANSEN and Donna Hansen, Plaintiffs–Appellants,**

v.

**Robert CANNON, et al., Defendants– Appellees.**

No. 01–3076.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 18, 2001.*

Decided Dec. 18, 2001.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and ROVNER, Circuit Judges.

### ORDER

Robert and Donna Hansen brought suit against Vermillion County, Illinois, the Village of Tilton, sheriff's deputies Robert Cannon and Daniel Auterman, Tilton police chief Charles Wolfe, and Tilton mayor Conrad Wantland alleging that the individual defendants and the local governments unconstitutionally caused their personal property to be seized in violation of 42 U.S.C. § 1983 and wrongfully evicted them from their property in violation of Illinois law. The defendants moved for summary judgment, and after staying discovery before the Hansens had served any interrogatories, the district court granted the defendants' motions. We conclude that the district court properly granted judgment for the county and the village, but improperly stayed discovery and consequently erred in granting the individual defendants' motions. We therefore affirm in part, vacate in part, and remand.

The Hansens owned two adjoining lots in Tilton, Lot 8 and Lot 9. A garage stood on Lot 8, and a house and two other garages stood on Lot 9. After a foreclosure sale, the Vermillion County Circuit Court ordered the sheriff's department to take possession of Lot 9 and turn it over to the Hansens' creditors. The order described the property as "Lot 9 ... commonly known as 121 W. 4th St., Tilton, Illinois." On November 5, 1997, the sheriff's department served the order on the Hansens, who were not home, and movers began to take away the Hansens' personal property. Although the court's order applied only to Lot 9, property located on Lot 8 was also removed, including several cars that were towed by the sheriff's department and a number of exotic birds that movers took to the county Animal Control Officer as abandoned property. The deputy who served the order of possession later recalled that someone questioned whether the garage on Lot 8 was part of the Hansen property and that a village police officer told him that the garage "was all part of the Hansen property."

Two days later, as the move-out continued, the Hansens returned to Lot 8 with their attorney and informed the movers that the order of possession did not extend to Lot 8. After the movers called 911 to have the three of them removed, Chief Wolf and Deputy Auterman responded. According to the Hansens, Wolf threatened to arrest Robert if he did not leave the property, and Auterman stood by as the movers continued to take the Hansens' belongings from Lot 8. The Hansens also claim that Auterman told them that he would contact Deputy Cannon because he was "in charge."

The Hansens' lawyer then left the property and called Cannon at the sheriff's office to tell him of the mistake. Cannon, who admits that he had been to the prop-

erty at some point during the foreclosure, then allegedly contacted an unidentified sheriff's employee at the scene. The unidentified employee told Cannon that "everything was all on one address" and that "someone from the [v]illage . . . confirmed that the entire property was one address." The Hansens' lawyer then returned to the property and on his advice the Hansens departed.

On November 9 Robert Hansen went to see Cannon, who is also the vehicle identification officer for the sheriff's department, to try to get the cars back. Cannon allegedly called Robert a "little guy" and told him he would have to pay the towing and storage fees for the cars when Cannon felt like releasing the cars. On November 18 Cannon sent notices to the Hansens at the Lot 9 address to inform them that their cars would be sold if not reclaimed within 10 days. The post office returned the notices because the Hansens had not left a forwarding address after the repossession of Lot 9, and on December 17 the cars were sold as junk. Robert also went to see the county Animal Control Officer to reclaim his exotic birds. Robert told the officer that he first needed to find a place for the birds since it was getting cold, but he never returned for them. After notice was placed in the newspaper that the birds would be given away if the Hansens did not retrieve them, the birds were given up for adoption.

In the district court the Hansens argued that the seizure of their personal property from Lot 8 violated their Fourth Amendment rights and that village officials assisted in the allegedly unlawful seizure in order to harass them. In support of their harassment theory, the Hansens alleged that Mayor Wantland had been at the property on November 5 and that he had informed the sheriff's department that Lot 8 and Lot 9 were really only one lot when

"he knew it was incorrect or did not bother to check." Wantland maintains, however, that "at no time did I inform the Vermillion County Sheriff's Deputies that there was only one lot." The Hansens also presented evidence that after the foreclosure village officials continued to enter Lot 8 and damage their property.

 On appeal the Hansens first argue that the district court improperly stayed discovery pending the outcome of the defendants' motions for summary judgment on the basis of qualified immunity. As the district court observed, one purpose of qualified immunity is to protect public officials from "broad-ranging discovery" that can be "peculiarly disruptive of effective government." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *accord Landstrom v. Ill. Dep't of Children & Family Servs.,* 892 F.2d 670, 674 (7th Cir.1990). But qualified immunity does not shield public officials from discovery entirely. If the Hansens' allegations stated a claim that the defendants violated a clearly established law, and the parties disagreed as to what actions the law enforcement officers took, discovery may be appropriate for the limited purpose of addressing the issue of qualified immunity. *See Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Landstrom,* 892 F.2d at 674; *Lovelace v. Delo,* 47 F.3d 286, 287 (8th Cir.1995).

 Seizing property, like the Hansens' property on Lot 8, without a court order is presumptively unreasonable under the Fourth Amendment. *See Soldal v. Cook County,* 506 U.S. 56, 63–69, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *Johnson v. City of Evanston,* 250 F.3d 560, 563 (7th Cir.2001). This rule was clearly established in November 1997 when the foreclo-

sure on Lot 9 occurred. *See Soldal,* 506 U.S. at 63–69, 113 S.Ct. 538. The parties dispute, however, whether the defendants acted reasonably based on the information given to them. That is precisely the sort of dispute that must be resolved using limited discovery. *See Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. 3034; *Landstrom,* 892 F.2d at 674; *Lovelace,* 47 F.3d at 287.

The Hansens point out that Lot 8 and Lot 9 formed part of a consecutively numbered grid of evenly sized lots in the village. According to the Hansens, survey stakes marked the boundary between the lots, and a fence separated the back of the lots. Given the physical features of the property alone, the Hansens claim, no reasonable official could have thought the order of possession covered both lots. The defendants, on the other hand, do not point to any evidence that rebuts the Hansens' claims and cannot point to anything that supports the district court's conclusion that they reasonably believed both lots were covered by the order of possession. The affidavits from Wantland, Wolfe, and Auterman say nothing about the order of possession. The affidavit from the officer who executed the order of possession says that a village police officer told him that the Lot 8 garage was part of the Hansens' property, but the record does not indicate that he relayed this information to the named defendants. And Cannon's affidavit says only that an unnamed member of the sheriff's department checked with "someone" from the village who "confirmed that the entire property was one address." But as the Hansens point out, the defendants offered no evidence to identify the "someone" from the village or to show that the person from the village was reliable. And, more fundamentally, the Hansens had no means of testing the accuracy of Cannon's account of his response to their lawyer's call. Based upon the record we therefore cannot say whether the de-

fendants had a reasonable belief about the scope of the order of possession. Because the discovery requested by the Hansens could very well have resolved the question, we conclude that the district court improperly granted the defendants' motion to stay discovery and improperly granted the individual defendants' motions for summary judgment.

The Hansens also contest the grant of summary judgment in favor of the county and the village. To impose liability on a municipality, however, the Hansens needed to identify a municipal "policy" or "custom" that caused them injury. *See Board of the County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here the Hansens did not allege or provide evidence of any policy carried out by the county. They do claim to be the victims of continued harassment by the village, but they never connect the alleged harassment to the events that occurred on the day of eviction or any other deprivation of their civil rights. We therefore conclude that the district court properly granted summary judgment in favor of both the county and the village.

For the foregoing reasons, we AFFIRM the judgment as to Vermillion County and the Village of Tilton, VACATE the judgment as to the individual defendants, and REMAND the case for further proceedings consistent with this order.